# IN THE OREGON TAX COURT

NATURE CONSERVANCY et al
*v.*
DEPARTMENT OF REVENUE
(TC 2022)

NATURE CONSERVANCY
*v.*
DEPARTMENT OF REVENUE
(TC 2177)

Linda M. Seluzicki, Lindsay, Hart, Neil & Weigler, Portland, appeared for plaintiff The Nature Conservancy.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, appeared for defendant.

Decision for defendant rendered January 8, 1985.

### EDWARD H. HOWELL, Judge Pro Tem.

These two cases, The Nature Conservancy, a nonprofit corporation, v. Department of Revenue, No. 2177, and the United States Forest Service v. Department of Revenue, No. 2022, were consolidated for trial and decision. Together they involve approximately 1,900 acres of land in Lake County. Case No. 2177 involves Tax Lot 800, which is owned by The Nature Conservancy, and No. 2022 involves tax Lots 600, 700, 1000 and 1100, which are owned by the United States Forest Service.

Most of the facts are common to both cases but the issues are different and will be discussed separately.

The lots owned by the Forest Service were sold to the Forest Service in July 1980 by The Nature Conservancy, a nonprofit corporation organized under the laws of the District of Columbia and authorized to do business in Oregon. The Nature Conservancy is involved in the acquisition of land in various states for the purpose of preserving its natural character. Prior to the sale, the land had been assessed as farm use land under ORS 308.370 providing for special assessment of farmland. After the sale to the Forest Service, the county assessor disqualified the land for farm use assessment for the tax year 1981-1982 based upon the subject property's "[s]ale * * * to an ownership making it exempt from ad valorem property taxation." (ORS 308.390(1)(b).) Deferred taxes were assessed, pursuant to ORS 308.395, which provides for additional taxes when the land becomes disqualified for farm use. However, ORS 308.396 provides for an exception to the assessment of additional taxes:

"No additional tax shall be imposed under ORS 308.395 upon an owner of land that has received special assessment as farm use land under subsection (2) of ORS 308.370 if the land becomes disqualified for such special assessment because the land is acquired by a governmental agency *as a result of the lawful exercise of the power of eminent domain or the threat or imminence thereof.*" (Emphasis supplied.)

The Forest Service contends that the property was acquired by the Forest Service from The Nature Conservancy under the threat or imminence of eminent domain under the above statute.

In July 1976 the subject property was included in a plan called the Dog Lake Recreation Composite and adopted by the Forest Service and the Department of Interior. the Composite, when finalized by the government, would result in the acquisition and management of the land by the Forest Service. The Department of Interior approved the Dog Lake Composite for funding from Land and Water Conservation Fund moneys when such funds were available.

During these negotiations the contract purchaser of the subject property, Russell Downey, became bankrupt. The Forest Service persuaded The Nature Conservancy to assist it in acquiring the property at the sale by the Trustee in Bankruptcy for resale to the Forest Service and assured The Nature Conservancy that the Dog Lake Composite included plans to purchase the property.

The Nature Conservancy purchased the property from the Trustee in Bankruptcy on March 7, 1979, for $630,000. Final approval of the funds to purchase the property was obtained on November 27, 1979, and the property was conveyed to the Forest Service on July 8, 1980, for a consideration of $800,000.

In support of its position that the property was acquired by the Forest Service under the "threat or imminence" of eminent domain, the Forest Service contends that the decision to acquire the property was made when the Composite was adopted in 1976. Also, there was testimony that the Forest Service has utilized eminent domain actions to acquire other similar Composites in Oregon and Washington.

There are no Tax Court or Supreme Court decisions interpreting the phrase "threat or imminence" of eminent domain as used in ORS 308.396. However, both parties refer to Section 1033 of the Internal Revenue Code of 1954 allowing an owner of property to defer recognition of gain from the sale of property if the sale is made under threat or imminence of condemnation. "Threat or imminence" of condemnation, as

used in Section 1033 of the Internal Revenue Code of 1954, has been defined in Rev Rul 63-221, 1963-2 CB 332, as:

> "For purposes of section 1033 of the Internal Revenue Code of 1954, threat or imminence of condemnation is generally considered to exist when a property owner is informed, either orally or in writing, by a representative of a governmental body or public official authorized to acquire property for public use, that such body or official has decided to acquire his property and the property owner has reasonable grounds to believe, from the information conveyed to him by such representative, that the necessary steps to condemn the property will be instituted if a voluntary sale is not arranged."

In the instant case, I do not believe that the property was sold by The Nature Conservancy to the Forest Service as a result of "threat or imminence" of condemnation. Plaintiff's witness, a forester working in land acquisitions for the Pacific Northwest Region, testified that, to his knowledge, the Forest Service had never condemned property from The Nature Conservancy. He stated:

"Q   Now you've indicated that you're familiar with some other cases in your Region where you've had to condemn property. Have you ever had to condemn any property from The Nature Conservancy?

"A   Nope, we're good — we're good friends. We — we try not to condemn our good friends.

"Q   Well, really, Mr. Starke, wasn't one of — one of the primary purposes, if not the primary purpose, of this whole arrangement with Nature Conservancy to avoid having to condemn property?

"A   Well, yes, we don't want to particularly condemn anything or anybody but the property had to be acquired and in the least time possible because of the deprivations of the cattle upon the lower part of the lake."

The record shows that, in effect, the Forest Service and The Nature Conservancy were acting together in the whole transaction. The Forest Service wanted to acquire the property to preserve it for the purposes of the Dog Lake Composite but funding was not available; The Nature Conservancy also was interested in preserving the land and was willing to fund the purchase knowing that eventually the Forest Service would receive the funds and repay it.

The evidence disputes plaintiffs' contention that the Forest Service acquired the land from The Nature Conservancy as a result of the "threat or imminence" of eminent domain and, therefore, the Forest Service is not entitled to the exception contained in ORS 308.396, *supra*.

One final issue remains. Both The Nature Conservancy, as the owner of Tax Lot 800, and the Forest Service, as the owner of the remaining land — Tax Lots 600, 700, 1000 and 1100 — contend that the lands are not subject to deferred farm use taxes because the lands were bought at the bankruptcy sale "free and clear of all liens and encumbrances."

A title report obtained by The Nature Conservancy in anticipation of the sale by the Trustee in Bankruptcy contained an exception regarding the additional tax to be levied against the property on disqualification from farm use assessment:

"10. As disclosed by the assessment and tax roll, the premises herein have been specially assessed for farm use. If the land becomes disqualified for this special assessment under the statutes, an additional tax, plus interest and penalty, will be levied for the number of years in which this special assessment was in effect for the land."

The exception noted in the title report undoubtedly was made in relation to ORS 308.390(1), which states in part:

"Upon approval of an application [for farm use assessment], the county assessor shall * * * enter on the assessment and the tax roll the notation 'potential additional tax liability' until the land becomes disqualified for * * * [farm use] assessment * * *."

Subsequently the Trustee's Deed was executed, conveying the land to The Nature Conservancy "free and clear of all liens and encumbrances." Both the Forest Service and The Nature Conservancy contend that the deferred farm use taxes constituted an encumbrance on the property and the Trustee's Deed sold the land to the Forest Service and The Nature Conservancy free of that encumbrance.

The property was entitled to the benefits of farm use classification until it became disqualified when one of the conditions set forth in ORS 308.390 occurred. It is only when that event—such as sale to an exempt owner—happens that

the liability for additional taxes under ORS 308.395 is involved. Thus, there was only a "potential additional tax liability" until the property was actually sold to the Forest Service in July 1980.

At the time The Nature Conservancy acquired the property from the Trustee in Bankruptcy in March 1979 the property herein was qualified and classified for special assessment as unzoned farmland. As such, pursuant to ORS 308.390, it was assessed at its true cash value for farm use and not at the true cash value the property would have had if applied to other than farm use.

■ The purchase by The Nature Conservancy did not trigger any disqualification of the land for farm use assessment. The county's lien for the additional tax did not arise until the land was sold by The Nature Conservancy to the Forest Service in July 1980. As the Forest Service is exempt from ad valorem taxation, the sale to the Forest Service operated as a disqualification under ORS 308.390 and the land then became subject to the additional taxes imposed by ORS 308.395. It was at that time that the lien for the additional taxes attached and not when The Nature Conservancy bought it from the Trustee in Bankruptcy. Thus, at the time of the Trustee's Deed to The Nature Conservancy, there was no lien to be removed by the bankruptcy court.

■ The same reasoning applies to Tax Lot 800 which is still owned by The Nature Conservancy. At the time The Nature Conservancy bought it "free and clear" there was no lien because the land was still in farm use. It was not until August 1981 when the land was no longer used for grazing that the assessor disqualified the land from special farm use assessment.

In summary, the Forest Service did not acquire the property from The Nature Conservancy under the imminence of the power of eminent domain and The Nature Conservancy and the Forest Service are both subject to the additional tax imposed by ORS 308.395.